Gerald Lee DICE, Appellant
(Defendant),

v.

Beverly Ann DICE, Appellee (Plaintiff).

Beverly Ann DICE, Appellant
(Plaintiff),

v.

Gerald Lee DICE, Appellee (Defendant).

Nos. 87–9, 87–10.

Supreme Court of Wyoming.

Sept. 11, 1987.

Dallas J. Laird, Casper, for Gerald Lee Dice.

Richard H. Peek, Casper, for Beverly Ann Dice.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

Cross appeals are presented questioning divorce-decree settlement of property interests and award of child support. The husband contests the amount of child support as excessive, and considers tax-related problems in the immediate cash payment of the property settlement granted to the wife. The wife contests an amendment to the judgment which recognized the bankruptcy of Associated Grocers of Colorado, Inc. as causing a reduction in marital estate value.

We affirm the child-support award, affirm the judgment-decree amendment, and remand for consideration of cash-settlement payment method in consideration of federal income tax problems and net values resulting therefrom.

Gerald Dice founded and operated Jerry's Food Market, Inc. in Casper as a retail

grocery enterprise. In the better days in Casper, the business was profitable, affording a good living, cash accumulation, and deposits to a retirement account in his name. Those good days no longer are to be found in Casper merchandising.[1]

Gerald was married to Beverly Ann in 1969, and a daughter, Rebecca Lynn, is now 13. Irreconcilable differences developed in part because of demands on Gerald's time in operation of the competitive grocery business in a recessive and troubled economic market; Beverly Ann developed an interest in roller skating, engendered to their daughter, so that the pathways of the parties developed different directions. The divorce proceeding, after nearly 17 years of marriage, was filed by the wife although undesired by the husband, and was accompanied by a change in her circumstance by moving to Greeley, Colorado, and engagement with her parents in a roller skating business.

Faced by the trial court was the usual almost unanswerable quandary of how to divide and then leave the parties with an ability to pick up the pieces. This appeal brings to us the court's decision for an abuse-of-discretion inquiry.

## I. CHILD SUPPORT

The amount awarded is obviously a serious burden on the father, considering Casper economic conditions. We would hold that as of the date of trial there was sufficient evidence to sustain the award made, justified apparently not from enterprise draw amounts but basic business income. If continued deterioration of economic status should occur, such that a substantial change in circumstances could be found, some future modification on that basis could be available. See *Cubin v. Cubin,* Wyo., 685 P.2d 680 (1984). Determination of amount of child support is vested in the sound discretion of the court. *Manners v. Manners,* Wyo., 706 P.2d 671 (1985). Our rule for analysis of exercised discretion is

carefully stated in *Martin v. State,* Wyo., 720 P.2d 894, 897 (1986):

"Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously."

## II. RECOGNITION OF THE BANKRUPTCY OF ASSOCIATED GROCERS OF COLORADO, INC., AND AMENDED JUDGMENT

In its original decree, the trial court had awarded the wife a cash settlement of $206,175 for property division. Through present counsel, a motion under Rule 59, W.R.C.P. for a new trial and/or amendment of judgment was made within ten days of the decree date, in behalf of the husband, on the basis that the decree divisional value of the business of $378,000 included $78,395 as valued in a cash participation certificate with the grocer wholesaler, Associated Grocers of Colorado, Inc. After trial on September 19, 1986, a decision letter was submitted October 6, with the decree to be prepared by counsel for the wife, which decree was then entered on October 30, including a net cash value at par for the participation certificate. On October 10 Associated Grocers filed bankruptcy, and on October 30 the husband was advised by the bankrupt that all credits were frozen but that in any event the redemptive value of the certificate without bankruptcy would not have exceeded $15,931.

In responding to this motion, the trial court by order deleted the Associated Grocers redemption certificate marital estate value of $78,395, and correctly provided for equal division of proceeds if and when received. The justice of the amendment order is self-evident, with the wife's contest being procedurally directed, challenging whether amendatory power remained with the trial court.

---

1. Recent newspaper reports of grocery store closings in Casper, and the significant change in the relative cost-of-living index for Casper afford expressive evidence of the declining profit in the grocery business.

■ This court applies the clearly applicable criteria for amendatory action pursuant to Rule 59, W.R.C.P., as well as Rule 60(b), W.R.C.P., and criteria stated in *Walton v. Texasgulf, Inc.*, Wyo., 634 P.2d 908, 913 (1981):

" * * * The party seeking a new trial on the basis of newly discovered evidence must satisfy the court that: (1) the evidence has come to his knowledge since the trial; (2) it was not owing to the want of due diligence that it did not come sooner; and (3) it is so material that it would probably produce a different verdict if a new trial were granted; and (4) it is not cumulative, viz, speaking to facts in relation to which there was evidence at trial."

We affirm the trial court's exercised discretion and decision in recognition with the trial court that in justice you cannot fairly divide numbered dollars which no longer exist or at least may never be. *Martin v. State*, supra; *Mini Mart, Inc. v. Wordinger*, Wyo., 719 P.2d 206 (1986); *Brasel and Sims Construction Co. v. Neuman Transit Co.*, Wyo., 378 P.2d 501 (1963).

## III. PROPERTY SETTLEMENT CASH-PAYMENT REQUIREMENT

The complicated appeal issue is the husband's question of federal income-tax attributes involved in the division and divorce-decree payment requirement being "abusive, arbitrary and confiscatory." He does not challenge the amount, but seeks help on appeal for modification of the manner of payment. Jerry's Food Market, Inc. was incorporated without the issuance of stock, and was treated by the litigants and the court as if husband and wife each owned an equal one-half interest in the corporate business. Balance sheets reflected two asset items in controversy, the Associated Grocers participation certificate of $75,876 earlier discussed, and an accumulated cash amount of about $180,000. Financial reports indicated that breaking even in current operations was made possible primarily by investment income earned on that savings, and not in grocery sale profits.

Also involved in the cash division decree settlement was a profit-sharing plan in the name of the husband of $50,710, which was likewise equally divided in decree computation and payment order. Appellant does not complain about the right of his divorced wife to receive a value equal to one-half the retirement account provided that with a division of corporate asset value, a realistic process and adequate time is afforded so that a continued operative capacity of the corporation and the decree income-tax attributes would be given fiscal consideration.

He phrased the argument as follows:

"The uncontroverted testimony at the trial of this matter was that the cash in the corporation, Jerry's Food Market, Inc., would be subject to Federal income tax should Appellant declare a dividend to himself. Mr. Dice also testified that if all the cash were taken out of the corporation, the corporation could not operate. "Unfortunately for the Appellant, the District Court did not take into account, at all, the Appellant's personal income tax liability if he were to withdraw money from his corporation and profit sharing account. In order to comply with the lower court's decree, Appellant will have to liquidate approximately $300,000.00 worth of his corporate assets in order to pay Appellee $166,977.41. * * *.

"The lower court's requirement of a cash payment under these circumstances is not *just and equitable* and did not leave proper consideration of the horrible condition in which Mr. Dice will be left by this Divorce Decree. Wyo.Stat. § 20–2–114 (1982) and *Paul v. Paul*, Wyo., 616 P.2d 707 (1980). In fact the Court should have ordered the sale of the business and the proceeds equally split between the parties. *Klatt v. Klatt*, Wyo., 654 P.2d 733 (1982)."

He further contends that take-home pay of $467 per week, as a business withdrawal, could not support the $500 monthly child-support obligation and repayment of a loan of $166,977 with interest, as would be required to fund the cash-settlement directive of the divorce decree.

In recognition of the withdrawal penalty, as well as income-tax factors, the retirement account obviously does not have a present withdrawal cash value equal to the face amount. This may be the unusual case under our recent consideration in *Broadhead v. Broadhead,* Wyo., 737 P.2d 731 (1987), where the wife might be granted a 50 percent interest in the IRA account, to be received by her as and when proceeds were available by retirement, husband's death or premature withdrawal, in the same fashion as she is now entitled to receive whatever may be paid on the Associated Grocers participation certificate. Possibly the account could be frozen in present status with dividend ownership. Again, tax attributes would require counsel and trial-court review as, for example, whether the husband could establish another separately owned account. Conversely, on remand, the court may want to determine the cash-out value after considering the penalty and income-tax amounts and withdrawal costs, and accord a present cash value of that computable amount as an obligation for present payment by the husband. We only determine that withdrawal after tax cash value should be reflected in divorce-decree division if an immediate cash payment is required. In divorce settlement, exercised discretion by the trial court requires federal income-tax assessment. *Martin v. State,* supra; Malman, *Unfinished Reform: The Tax Consequences of Divorce,* 61 N.Y.U.L.Rev. 363 (1986).

This leaves for resolution the cash-out decree order for corporate value as a shareholder obligation. Clearly, the liquidation value for division purposes, when in effect the husband is required to purchase the stock of the wife, requires income-tax-funding assessment. Again, it is axiomatic that he has to get money to give money and is in one fashion or another faced with after-tax dollars from which payment must be made. The extensive literature on divorce settlement and corporate reorganization affords diverse choices available in the method, process and timing. See, for example, 2 McCahey, Valuation and Distribution of Marital Property, § 41.14. It would be inappropriate for this court to assume discretional responsibilities which are better performed in ingenuity, research and persuasion of trial counsel, and comprehensive factual analysis of the trial court. Certainly we all must recognize that what is not realistic or reasonably possible is not necessarily accomplished because it is included in a court decree. *Broadhead v. Broadhead,* supra. Cf. *Rubeling v. Rubeling,* Wyo., 406 P.2d 283 (1965). Likewise, if the husband's grocery business is destroyed, the child-support payment is endangered by changed circumstances which likely would engender a petition for modification. *Cubin v. Cubin,* supra.

The amended order changing status of the Associated Grocers participation certificate is affirmed. The child-support order is affirmed. The case is remanded for a hearing to reconsider property-settlement provisions of the divorce decree in accord herewith.

Affirmed in part, reversed in part, and remanded.