BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware Corporation, Appellant (Plaintiff),

v.

David DUNKELBERGER, Appellee (Defendant).

No. 95–213.

Supreme Court of Wyoming.

June 24, 1996.

Jeff Hedger of Kroschel & Yerger, Billings, John Fenn of Yonkee & Toner, Sheridan, for appellant.

Alexander (Zander) Blewett, III of Hoyt & Blewett, Great Falls, Sharon Fitzgerald of Fitzgerald Law Offices, Cheyenne, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The only question in this case is whether Burlington Northern Railroad Company (Burlington) is foreclosed from relief in its action against David Dunkelberger (Dunkelberger) by decisions of the courts of the State of Montana. After executing a release relating to two separate personal injury claims against Burlington, Dunkelberger brought an action for damages against Burlington for the claim that was not time-barred. He asserted the release was fraudulently obtained, and a jury in the Montana court agreed with him. Burlington then sought a set-off against the judgment entered in favor of Dunkelberger for the amount paid in the settlement. The Montana trial court ruled there could be no set-off because Burlington was unable to apportion the amount paid between the injury for which the judgment was obtained and the injury that was time-barred. Judgment was entered against Burlington for the full amount of the jury verdict, and this became a final judgment in Montana when Burlington's appeal was dismissed. We hold Burlington's action in Wyoming to recover the amount paid in settlement is foreclosed by the doctrine of *res judicata* when full faith and credit is extended to the Montana judgment. The "Order Granting Defendant's Motion to Dismiss (Filed February 16, 1995)" entered in the district court on July 3, 1995 is affirmed.

In its Appellant's Brief, Burlington presents the issue for review as:

A. Did the District Court err by granting Defendant's Motion to Dismiss on the grounds of judicial estoppel?

In his Brief of Appellee, Dunkelberger sets forth this statement of the issues:

A. Whether affording the Plaintiff Burlington Northern additional discovery would be an exercise in futility.

B. Whether this Court should affirm the trial court's order barring Plaintiff Burlington Northern from re-litigating its alleged $214,000.00 claim against Defendant David Dunkelberger. Specifically:

1. Does the Full Faith and Credit Clause of the United States Constitution bar re-litigating the claim?

2. Do the doctrines of collateral estoppel and *res judicata* bar Plaintiff from re-litigating claims that have already been rejected by a Montana court?

3. Is Plaintiff Burlington Northern's Wyoming action preempted by the Federal Employers [sic] Liability Act.

4. Should the District Court's judgment be affirmed on the basis of judicial estoppel?

C. Should the District Court's judgment barring relitigation of the Plaintiff's $214,000 claim against Mr. Dunkelberger be affirmed because Burlington Northern not only could have but was required to raise every theory of law which supported its claim in the Montana action?

Dunkelberger was employed by Burlington as a conductor. He suffered back injuries during his employment on two occasions: once, on July 21, 1987; and again, on August 20, 1989. Dunkelberger arrived at a compromise of his injury claims with Burlington, and he signed a "Release of All Claims" arising from those injuries in exchange for $214,000. The release covered any claims for injuries Dunkelberger incurred inclusively to the date of the release, February 6, 1990.

After execution of the release, Dunkelberger filed an action pursuant to the Federal Employer's Liability Act, 45 U.S.C. §§ 51–60 (1988) (FELA), in which he alleged Burlington had obtained the release by fraud, and the injury incurred on August 20, 1989 was proximately caused by Burlington's negligence. Dunkelberger's action against Burlington did not include any claim for the injury sustained in 1987 because it was barred by the three-year statute of limitations found in FELA. Dunkelberger demanded a jury trial.

At the trial, the jury found Burlington had fraudulently obtained the release. The jury then awarded Dunkelberger a verdict in the amount of $450,000 for his FELA claim against Burlington. Before a judgment could be entered on the verdict, Burlington petitioned the court for a set-off of $214,000, the amount it had paid for the release. Dun-

kelberger filed a motion requesting the court to enter judgment for the entire $450,000, asserting Burlington had failed to establish any right to set-off.

The issue of amending the judgment to set off the $214,000 against the judgment in favor of Dunkelberger was argued in briefs presented by Burlington and Dunkelberger. In addition to urging set-off, Burlington argued in a supplemental brief:

It is a fundamental principle of law expressed in Montana * * * that when a party seeks to rescind a contract the party "must restore to the other party everything of value which he has received from him under the contract or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so." It is simply elementary that when a contract has been declared void for reasons of fraud or mistake, the contract is void ab initio. Once the contract has been rescinded, it is as if it never existed and the parties are returned to their former status. Plaintiff's [Dunkelberger] arguments simply ignore this fundamental principle of contract law * * *.

The trial court in Montana refused to set off the $214,000 and entered a judgment in favor of Dunkelberger for the full amount of $450,000, plus interest and costs. The court ruled Burlington had established that some part of the $214,000 was attributable to the July 21, 1987 injury, but it refused set-off because Burlington "did not carry its burden of proof as to what amount of the $214,000 payment was attributable to the July 21, 1987 claim and what amount was attributable to the August 20, 1989 claim." The claims representative, who had obtained the original release, testified that apportionment between these two claims was not possible.

Burlington was neither discouraged nor deterred by the court's ruling, and it filed a motion for a new trial, while at the same time renewing its motion to amend the judgment. Burlington again urged its entitlement to the money based upon rescission of the contract (the abrogation of the release) and unjust enrichment. The district court refused relief for Burlington. The same arguments were asserted, for yet a third time, in Burlington's Appellant's Brief submitted on Appeal from the Eighth Judicial District Court of Cascade County, Montana to the Montana Supreme Court:

The effect of a jury's declaration that a contract is invalid is simply a legal determination that the contract never existed. * * * To now allow him [Dunkelberger] to keep the money and to not have it deducted from the judgment awarded by the jury in this case would simply result in **unjust enrichment** and would be contrary to the most fundamental **principles of recision**. (Emphasis added.)

These arguments were inefficacious because the Supreme Court of Montana dismissed Burlington's appeal, holding it was not timely. The Supreme Court of Montana denied Burlington's petition for rehearing.

The following year, Burlington brought its action in Wyoming. In its complaint, Burlington articulated the facts regarding the jury's finding that the release was invalid and the later verdict returned in favor of Dunkelberger for $450,000. Burlington sought:

Judgment against the Defendant in the amount of $214,000, with interest, costs of suit, and such other further relief as the Court deems just and equitable in the premises, to restore Burlington Northern Railroad Company to the position it was in prior to execution of the February 6, 1990 Release, and to prevent **unjust enrichment** of Dunkelberger; * * *.

The underlying justification for this prayer was the rescission of the release by the jury's verdict.

Dunkelberger responded by a Defendant's Motion to Dismiss Pursuant to Rule 12 and/or Motion for Summary Judgment Pursuant to Rule 56, together with a brief in support of the motion and exhibits from the Montana case. Burlington then filed Plaintiff Burlington Northern Railroad Company's Brief in Opposition to Defendant's Motion to Dismiss or for Summary Judgment, **together with its supporting documentation.** This included an affidavit of the attorney who represented Burlington in Montana, which

stated, among other things, "To date, Dunkelberger retains possession of or the benefit of the $214,000.00 he was previously paid representing a settlement of incidents occurring in 1987 and 1989." Dunkelberger filed a reply brief and, pursuant to a court order, later filed a supplemental brief. Burlington also filed a supplemental brief in reply.

On July 3, 1995, the district court entered its Order Granting Defendant's Motion to Dismiss (Filed February 16, 1995). In that order, the court stated in its last two findings:

> (6) At the 1993 trial in Montana, "BN" proved a portion of the $214,000.00 already paid applied to the 1987 injury. However, "BN" did not prove any specific amounts;
>
> (7) "BN" now wants a chance to prove appropriate allocation between the 1987 and 1989 claims, *in a Wyoming Court,* in hopes they can recover part of the $214,000.00 payment. (Emphasis in the original).

In a portion of the order denominated "Discussion," the court also stated:

> However, given the history of this litigation, "BN" certainly knew apportionment was an issue at the time of the 1993 Montana trial.
>
> Based on all of the facts and circumstances of this case, judicial estoppel now precludes "BN" from seeking recovery of all or any portion of the $214,000.00 payment.

Burlington appeals from that order.

■ As one aspect of its claim of error, Burlington contends the district court did not give appropriate notice of its intent to convert Dunkelberger's motion to dismiss under WYO. R. CIV. P. 12(b)(6) into a motion for summary judgment. For that reason, Burlington argues dismissal is appropriate only if its complaint shows on its face that it was not entitled to relief under any set of facts. We ruled in *Kimbley v. City of Green River,* 642 P.2d 443, 445 (Wyo.1982) (quoting from *Davis v. Howard,* 561 F.2d 565, 571–72 (5th Cir.1977)), that conversion from a Rule 12(b)(6) motion into a motion for summary judgment need not be accomplished by order of the court, saying:

> The record must adequately demonstrate that all counsel were aware of the intentions of the district judge to treat the motion as converted, together with a reasonable opportunity afforded to the non-moving party to present, by way of affidavit or otherwise, anything necessary to rebut the contention of the moving party.

*See also Mostert v. CBL & Associates,* 741 P.2d 1090 (Wyo.1987); *Torrey v. Twiford,* 713 P.2d 1160 (Wyo.1986).

Dunkelberger's motion was styled "Defendant's Motion to Dismiss Pursuant to Rule 12 and/or Motion for Summary Judgment Pursuant to Rule 56." When it responded, Burlington filed a pleading entitled "Plaintiff Burlington Northern Railroad Company's Brief in Opposition to Defendant's Motion to Dismiss or for Summary Judgment." That was followed by Dunkelberger's pleading entitled "Defendant's Reply Brief in Support of Motion to Dismiss and/or Motion for Summary Judgment." The documentation in this record establishes knowledge on the part of both Burlington and Dunkelberger that the motion was in the alternative for dismissal or summary judgment. As we noted in *Torrey,* 713 P.2d at 1164, the requisite notice of conversion can be found in the record "by a writing such as a pleading, a letter, a written stipulation, or an oral stipulation on a transcribed record."

In this case, the record reveals at least three pleadings attesting to the anticipation of the parties of a possible order for summary judgment. Furthermore, documentation relating to a motion for summary judgment was filed in the record by both sides, "indicating that the parties were prepared to have the motion decided pursuant to Rule 56." *Torrey,* 713 P.2d at 1164. The affidavit filed by Burlington's attorney also stated, "The pleadings attached to this Brief in opposition to Defendant Dunkelberger's Motion to Dismiss are true and correct copies of pleadings filed in **Dunkelberger v. Burlington Northern** in Montana (emphasis added)." In this regard, we said in *Torrey,* 713 P.2d at 1164:

> When a party files an affidavit which a judge considers under a Rule (12)(b)(6) motion, this court will treat the motion as a

motion for summary judgment * * * whether or not the record demonstrates that the parties had other notice of the conversion, unless the record otherwise demonstrates unfair or inappropriate surprise to either party but normally for the nonmoving party.

We are satisfied that, in filing an affidavit in opposition to Dunkelberger's motion to dismiss under WYO. R. CIV. P. 12(b)(6), Burlington acceded to the conversion of the motion to dismiss into one for summary judgment. *See also Mostert; Torrey; Kirby Bldg. Sys., Inc. v. Independence Partnership No. One,* 634 P.2d 342 (Wyo.1981); *Wyoming Ins. Dep't v. Sierra Life Ins. Co.,* 599 P.2d 1360 (1979). We hold Burlington was afforded reasonable notice that Dunkelberger's motion could be considered by the trial court as a motion for summary judgment. On the record in this court, Burlington was not prejudiced by the trial court's treatment of Dunkelberger's dual motion as a motion for summary judgment.

There is no debate in this case about any genuine issue of material fact that would preclude summary judgment in favor of Dunkelberger. *See Hanna v. Cloud 9, Inc.,* 889 P.2d 529 (Wyo.1995); *Wilder v. Cody Chamber of Commerce,* 868 P.2d 211 (Wyo.1994). This case is one in which no genuine issue of fact could be material if Dunkelberger is entitled to judgment as a matter of law. *Daily v. Bone,* 906 P.2d 1039 (Wyo.1995); *Beaudoin v. Kibbie,* 905 P.2d 939 (Wyo.1995); *Martin v. Alley Const., Inc.,* 904 P.2d 828 (Wyo.1995). The appropriate rule of law, indeed, is the focus of the debate of the parties.

In addressing the entitlement of Dunkelberger to a judgment as a matter of law, we begin with the proposition that, under the Full Faith and Credit Clause of the Constitution of the United States, Article IV, § 1, the final judgments, orders, and decrees pronounced by a court of any state are to be fully recognized as legal acts in all other states. We have summarized that proposition in this way:

> The United States Supreme Court has held that full faith and credit "generally requires every State to give a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it." A foreign judgment will be enforced to its full extent regardless of any errors or irregularities it may contain.
>
> The full faith and credit clause generally protects the judgment of a court of a sister state against collateral attacks, unless proper grounds for the collateral attack can be established.

*Sandstrom v. Sandstrom,* 880 P.2d 103, 106 (Wyo.1994) (quoting with approval from *Marworth, Inc. v. McGuire,* 810 P.2d 653, 655–56 (Colo.1991)).

■ The premise of the Montana court's judgment was that, in light of Burlington's failure to establish apportionment between the 1987 and 1989 injuries to Dunkelberger, there was no evidence that would justify the court in offsetting any of the $214,000 paid in the settlement against the $450,000 judgment in favor of Dunkelberger, which related to the 1989 injury only. Burlington has not attempted to demonstrate any invalidity in the Montana judgment or made any showing it should be considered void. Since no proper grounds exist for collateral attack upon the Montana judgment, we hold it is entitled to full faith and credit in Wyoming.

■ We turn then to the doctrine of *res judicata* and the determination as to whether the claims asserted in Wyoming are the same as those decided by the Montana court. In *Delgue v. Curutchet,* 677 P.2d 208 (Wyo. 1984), we recognized that the doctrine of *res judicata* forecloses litigation of a claim resolved by an earlier judgment. Collateral estoppel prevents relitigation of issues actually and necessarily involved in the prior action between the same parties. We have defined judicial estoppel, the ground relied upon by the district court in this case, in this way:

> The principle, while denominated judicial estoppel, is sometimes referred to as a doctrine which estops a party to play fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one cannot blow hot and cold in the same breath. A party will just not be allowed to maintain inconsistent

positions in judicial proceedings, as here. 31 C.J.S. Estoppel § 117, pp. 624–25.

*Allen v. Allen,* 550 P.2d 1137, 1142 (Wyo. 1976).

See also *Willowbrook Ranch, Inc. v. Nugget Exploration, Inc.,* 896 P.2d 769 (Wyo.1995); *Matter of Paternity of SDM,* 882 P.2d 1217 (Wyo.1994); *Bredthauer v. TSP,* 864 P.2d 442 (Wyo.1993). It is clear judicial estoppel does not fit this particular case.

■ We are satisfied, however, that the doctrine of *res judicata* is appropriate to and does dispose of this case. Four criteria must be satisfied:

(1) The parties were identical; (2) the subject matter was identical; (3) the issues were the same and related to the subject matter; and (4) the capacities of the persons were identical in reference to both the subject matter and the issues between them.

*Livingston v. Vanderiet,* 861 P.2d 549, 552 (Wyo.1993).

See also *Osborn v. Painter,* 909 P.2d 960 (Wyo.1996); *Claim of Moriarity,* 899 P.2d 879 (Wyo.1995); *Matter of Paternity of SDM,* 882 P.2d 1217 (Wyo.1994); *Matter of Paternity of JRW,* 814 P.2d 1256 (Wyo.1991).

■ Dunkelberger and Burlington are the same parties involved in the Montana litigation. The same claim was asserted in the Montana court. Burlington there was asserting a right to the $214,000 as a set-off against Dunkelberger's judgment. Here the same right is advanced based upon theories of unjust enrichment, breach of contract, and rescission. While these theories were not presented as defenses in the original answer of Burlington to Dunkelberger's complaint, they were presented at varying stages to the Montana court. This was known to the Wyoming court in the course of the proceedings prior to the entry of its order granting Dunkelberger's motion to dismiss. The record adequately demonstrates the court considered all of that background.

Furthermore, Burlington is foreclosed from presenting to the Wyoming court any and all theories it could have advanced in the Montana litigation. To permit Burlington to do otherwise would result in impermissible claim splitting or, as in this case, "defense splitting." See *Foianini v. Brinton,* 855 P.2d 1238 (Wyo.1993); *see also Hansen v. Sheridan County Sch. Dist. No. 2,* 847 P.2d 1026 (Wyo.1993). As the United States Court of Appeals for the Second Circuit recently stated in articulating the reach of the doctrine of *res judicata:*

However, "the bar of *res judicata* extends not only to questions actually decided, but also to all grounds of recovery and defenses which might have been presented in the prior litigation between the parties." As a result, "[a] **defendant may not litigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original plaintiff.**"

*Pirela v. Village of North Aurora,* 935 F.2d 909, 911–12 (7th Cir.1991), *cert. denied,* 502 U.S. 983, 112 S.Ct. 587, 116 L.Ed.2d 612 (1991) (emphasis added, citations omitted). Burlington could have presented these theories in the Montana action and is now barred by the doctrine of *res judicata* from doing so in the courts of Wyoming.

There is no question that the right of Burlington to the benefit of the $214,000, on any conceivable theory, was the same question decided directly by the Montana court, adversely to Burlington. Finally, both parties had the same fundamental interest in determining who was entitled to the benefit of the $214,000 in the Montana proceeding. Burlington's action against Dunkelberger in Wyoming is an attempt to avoid the binding effect of the Montana judgment, and that attempt is barred by the doctrine of *res judicata.*

Our analysis does not address collateral estoppel or preemption under FELA because we are entitled to affirm the district court on any proper ground. *Matter of Harrington's Estate,* 648 P.2d 556 (Wyo.1982); *Agar v. Kysar,* 628 P.2d 1350 (Wyo.1981); *Wightman v. American Nat'l Bank of Riverton,* 610 P.2d 1001 (Wyo.1980). We affirm the district court based upon the doctrine of *res judicata,* which flows from our constitutional obligation to give effect to the Montana judgment under the Full Faith and Credit Clause

of the Constitution. The Order Granting Defendant's Motion to Dismiss (Filed February 16, 1995) is affirmed.